The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. And this is our case number 424-1254, the Estate of Roffers v. Hageman Trucking. Appellate, please state your name. Good morning, your honors. Alex Stamatoglou for the Plaintiff Appellant Monica Roffers in her capacity as the executor of the estate of her deceased husband, Gregory Roffers. And counsel for the appellee. Yes, Judge. Jason Jording on behalf of the appellees in this case. There's several and one is an individual, Valerie Weber. The other two are two separate entities, Hageman Trucking LLC from Wisconsin and Hageman Trucking LLC, a defunct company from Illinois. Thank you. You may proceed. Appellant. Thank you, your honor, and may it please the court. My name is Alex Stamatoglou and I represent the Plaintiff Appellant in this matter, Monica Roffers. This court has jurisdiction over this appeal under Illinois Supreme Court Rule 303a because plaintiff's notice of appeal was filed within 30 days of the trial court's last pending close judgment motion. Your honor, this appeal presents the issue of whether a trial court may deny a plaintiff's proposed amended complaint before discovery has been initiated that states a claim under law that does not prejudice the defendant's ability to defend against plaintiff's claim and is based on newly revealed evidence that was submitted in defendant's previous pleading. The trial court denied plaintiff's motion for leave to file her fifth amended complaint under these circumstances. The trial court's denial of plaintiff's motion for leave to file her fifth amended complaint and her subsequent motion to vacate that order was an error and an abuse of discretion. We therefore respectfully request that this court reverse the trial court's denial of the plaintiff's motion for leave to file her amended complaint and her motion to vacate and order the trial court to permit plaintiff to file her fifth amended complaint. I'll address four main points, your honors, which mirror the four factors that govern whether a court should permit a party to amend her pleading that were announced by our Supreme Court in Loyola Academy v. S&S Roof Maintenance, Inc., 146 L. 2nd, 263. First, plaintiff's proposed fifth amended complaint cured a defect in the previous pleading. It did so by, number one, stating a claim for unpaid wait time wages under the Illinois Wage Payment and Collection Act, 820 Illinois Compiled Statutes 115, and, number two, by removing a previously pled claim that was no longer viable under the act. Second, the proposed fifth amended complaint would not surprise or prejudice the defendants. In this court in Miller v. Pinnacle-Doroco, Inc., 301 Ill. Ab. 3rd, 257, stated, quote, for a delay to prejudice a party, it must operate to hinder his ability to present the case on the merits, end quote. This case had not yet entered discovery, and permitting the plaintiff to file her fifth amended complaint would in no way have prejudiced the defendants in defending the case on the merits. Counselor, if I could interrupt just a moment. Of course. I hear you arguing, or I've read your pleadings, or your papers as well, that you can amend during the pleading stage. How many shots does the plaintiff get to file a complaint here? Is there a limit? There's no limit in law. There's no limit in the statute. Whether a court, whether a plaintiff can or may amend is subject to a trial court's discretion. And that discretion is governed by section 616 of the Illinois compiled statutes, which permits pleading under just and reasonable terms, and under the four factors that have emanated from that statute. So, Your Honor, I cannot tell you what the limit is because there is no limit in the law, at least none that I have read. What I can tell you is that these, under Illinois statutory law, and under the court's discretion, under the four factors announced in Loyal Academy, pleadings are permitted where it is just and reasonable. Thank you, counsel. Thank you, Your Honor. Third, Your Honors, the proposed fifth confirmed with timely. This, again, this matter was still in the pleading stage. It had not yet entered discovery. And the Supreme Court has held in multiple cases that when a complaint is, or a proposed amended complaint is filed in the pleading stage, it is timely. And lastly, Your Honors, fourth, plaintiff did not have previous opportunities to amend her complaint. As I alluded to a moment ago, plaintiff's proposed fifth amended complaint stated a claim under the wage act. And it also removed a previously pled claim for, based on unpaid line haul commissions. Both of these claims, both of these actions were based on defendant's previous pleading that had not been disclosed to plaintiff prior to that pleading. Upon review of defendant's evidence that they submitted in support of their motion to dismiss the fourth amended complaint, plaintiff had two options. They could file a response to that motion to dismiss in support of a claim that it no longer believed was viable, certainly not ethically. Or second, they could file a motion to correct the pleadings and allege a viable claim. And that's what Ms. Roffers did. And having satisfied these four, the four factors announced in Loyola Academy, Ms. Roffers did the, excuse me, and having failed to, my apologies, Your Honor. Having satisfied these factors, Ms. Roffers proposed fifth amended complaint, satisfied the factors in Loyola Academy and under section 616 of the Illinois compiled statutes. Now, Your Honors, I am aware that you read the papers, but I'll give a brief factual recitation of the case. Greg Roffers was employed by defendant defendant, Hageman Trucking LLC, an Illinois limited liability company from July 2012 through July 2015. He was a truck driver and he was killed in an accident while hauling freight for Hageman Trucking. Hageman Trucking is, they haul primarily milk and other liquid goods. Plaintiff's wages for purposes of this appeal boil down to two components. Number one, line haul wages, which is derived from by taking the revenues that Hageman Trucking earned from its customers and paying a percentage of those revenues to Mr. Roffers. Second, Mr. Roffers entered into an agreement for wait time wages. Mr. Roffers incurred wait time when he waited for an excessive period of time, usually around two hours, without being unloaded or loaded at the shipper or receiver. For each hour that Mr. Roffers incurred wait time, Mr. Roffers and the defendants agreed that he would be paid $50. Now, your honors, plaintiff filed her original complaint in Joe Davis County on January 21st, 2021 under the Illinois Wage Act. The case was transferred out of Joe Davis County after the trial court granted the defendant's motion to transfer to Stevenson County in the 15th judicial district. Over the next year or so, after a few changes of judge and after plaintiff had filed a proposed second amended complaint, which was dismissed without prejudice, and a third amended complaint that was dismissed without prejudice, the plaintiff filed her fourth amended complaint on July 21st, 2023. Like the two previous iterations of her pleading, plaintiff alleged one count under the Illinois Wage Act, seeking unpaid commissions, line haul commissions under that 30 or 31% percentage, and unpaid wait time. In that fourth amended complaint, Ms. Roffers alleged that the defendants were required to pay Greg Roffers for wait time, that none of the pay stubs that Greg Roffers had received during his employment identified how much revenue the defendants received due to the wait time he incurred, and that Hageman Trucking falsified the total amount of revenue derived from his wait time. The defendants moved to dismiss the fourth amended complaint, and that's the motion that I alluded to just moments ago. The motion to dismiss was under section 619.1. It was a combined 615 and 619 motion. In support of defendant's 619 motion, the defendants attached what appeared to look like source documents disclosing the actual revenues earned from its customers, from which Mr. Roffers' line haul commissions were derived. Upon reviewing this by myself and by Ms. Roffers, it became apparent that our allegations could no longer be brought as far as the line haul commission wages go, in light of the evidence that the defendants had submitted and had disclosed for the first time to the plaintiff. However, in addition to that, it became apparent, based on both the documents that the defendants had submitted and comparing them to pay stubs that Ms. Roffers had submitted along with her amended complaint, that the defendants had paid Mr. Roffers' wait time incorrectly. They didn't pay him $50 an hour. They paid him 30 or 31 percent of $50 an hour, and that's not the agreement that they entered into when he began to work for them. So, in light of this new evidence and rather than responding to a motion to dismiss, which the plaintiff partially agreed with in light of the evidence that the defendants had submitted, the plaintiff moved for leave to file her fifth amended complaint. It removed the line haul commission's claim, and what remained was the wait time claim under the Wage Act, and in support of that, plaintiff alleged the following facts, that Mr. Roffers in Hageman Trucking, Illinois, reached a verbal wage agreement as far as line haul revenues in which he would earn a percentage, and they also agreed that he would earn $50 per hour of wait time incurred. Ms. Roffers also alleged that she herself confirmed this verbal agreement with the defendant, Valerie Weber, in August or September of 2012, and in several subsequent phone calls with Ms. Weber. That's been alleged before? It had not, your honor. That was an allegation that did not appear in the previous pleadings, but it still... Nine years after the cause of action accrued, eight years after the case started, and 36 months since there'd been a series of amendments, is the first time this is alleged? That's correct, your honor. You're not contending that's newly discovered evidence, are you? That's not. The conversations between Ms. Roffers and Ms. Weber, that's not newly discovered evidence. Ms. Roffers knew that she had that conversation, and we inserted that to better support our claim for unpaid wait time with additional supporting allegations. Why would you wait till the fifth amended complaint to do that? That sounds like fairly significant factual claims. Well, your honor, although those conversations did occur and Ms. Roffers was aware of them, what we had previously alleged, or we believed, was really the crux of the case and the crux of that claim. That is, the agreement between Greg Roffers, who is no longer with us, and the defendants, Hageman, Trucking, and Ms. Weber. Now, we had alleged in previous iterations of the pleading that we had alleged that agreement or an agreement for unpaid wait time. You didn't think it might have been significant to buttress that claim with an allegation that the plaintiff in the case has had a direct conversation about some of those retrospect, we certainly could have added that allegation. It may have helped clear up a lot of confusion. Nevertheless, your honor, we added that as a supporting allegation, an allegation that supported a previously alleged agreement and a previously alleged violation of that agreement by defendants. Although it may be significant, a plaintiff is required to plead enough facts to plead a claim. We believed in good faith that we had done that previously. Certainly, as far as the wait time claim, this additional fact as far as conversations between the plaintiff herself and the defendants certainly supported that. We did allege it eventually. So, yeah, just to catch up, your honors. So, we did allege in the proposed fifth amended complaint, which supported previous iterations of the pleading that Ms. Weber and Ms. Roffers discussed this wage agreement. And we further allege that the defendants failed to pay the $50 per hour that they agreed to pay Mr. Roffers. Now, there was no briefing on plaintiff's motion for leave to file her fifth amended complaint. There was a brief argument held on February 1st, 2024. And the court ruled on plaintiff's motion for leave, as well as the defendant's motion to dismiss the fourth amended complaint on March 15th, in which the court granted the motion to prejudice and denied plaintiff's motion for leave, citing specifically to prejudice visited upon the defendant by a proposed amended complaint. Your honors, as you all know, the standard of review is abuse of discretion. And as stated by the Supreme Court and Loyola Academy, while discretion may be broad, judicial discretion must be exercised within the bounds of the law. Now, whether an amended pleading may be permitted is governed by section 616 of the Illinois compiled statutes, which states that at any time before final judgment amendments may be allowed on just and reasonable terms, which may enable the plaintiff to sustain the claim for which it was intended to be brought. Now, again, as I cited earlier, in Loyola Academy, whether just and reasonable terms have been met are determined by looking at four factors. Number one, whether the proposed amendment would cure the defective pleading. Number two, whether other parties would sustain prejudice or surprise by virtue of the proposed amendment. Third, whether the proposed amendment was timely. And fourth, whether previous opportunities to amend the pleading could have been identified. As to the first, as previously stated, your honors, Ms. Roffers stated a claim in her proposed fifth amended complaint. She alleged a wage agreement. She alleged the terms of that agreement. She alleged that defendants had failed to honor that agreement by underpaying Mr. Roffers. Now, whether a proposed amended pleading cures a defect has been found to be determinative. It time's up, counsel. You'll have some opportunity to argue further. Thanks. Mr. Jordan. Good morning, justices. May it please the court, counsel. This is a appeal that is built on a crumbling foundation of falsity. The major falsity is that the proposed amendment is timely and that there have been no attempts to plead before. Let's deal with the easy one. This is the sixth attempt to plead a legally sufficient claim. There have been ample opportunities. To answer Justice Fancel's question, are there limits on the number of times? Yes, that's that factor. That factor is the factor considered where a court looks at Loyola and says, have there been previous opportunities to replead? While the number is not a set in stone number, it's within the discretion of the trial court. I think the trial court was very generous in this case under that factor. And the reason why it's false to say this is the first opportunity to replead, besides the fact, I mean, just on the face of it, the fifth amended complaint is the sixth attempt to replead. We can look back at the prior pleadings in which, and I just have an example, if we look at the record on C-738 through C-740, plaintiff previously pled, exactly what he's saying now was new information for the fifth amendment complaint. He had the invoices from the customers. He pleads that. He alleged a wait time deficiency in payment. It's exactly what he's saying he's curing that the court has dismissed before. It's the exact same thing. So there is no cure here. And that comes out of the second amended complaint, many iterations prior. But before we even get to that, we raise a significant issue. Timing matters, and it matters in many ways in this case. Obviously it's one of the Loyola factors, but obviously this is a motion that comes after the circuit court timeline for responding has elapsed and is submitted, not accepted even, it wasn't even accepted at the time of our oral argument. It is submitted at 4.32 PM, the day prior to oral arguments on the motion to dismiss. That violates local rules. There's no notice of hearing. And as the record reflects, I objected to the hearing and said, this is not properly before the court today. We're not having a hearing on this motion. It wasn't proposed at the time of the argument. And I rely on the just ordinary common definition of what it means to propose. The definition tells us to set forth for acceptance or rejection, to set forth as an aim or intent. How do we as lawyers set forth things with the court? We file a motion, we notice it for hearing. That's what we do. There was no notice of hearing. The motion wasn't even accepted at the time of the hearing. So I have a serious problem. And I note in the reply, we bring up this timing issue and there's no contrition by appellant on violating court orders with the timing. And what they say is they have excuses, but I look at it and say, there's ways that we as lawyers deal with this. We ask the court for additional time. We make a motion to extend. That's our duty under Rule 3.4. Our duty is to follow a court order unless we can absolutely say on the face of it, there's no basis for this. Mr. Jordan, did the trial court not rule though on the motion for leave in the same order as the motion to dismiss? The court did, Judge. Now, I'll tell you that there's no, the order that rules on it does not set forth specifically the reason why that denial exists. What I would say is the proper thing would be the motion to dismiss was filed, noticed up, set for argument. The court rules on the motion to dismiss. The other motion isn't set. When the motion to dismiss is ruled upon, that is a final judgment. At that point, the motion for leave should be denied because it cannot proceed after final judgment. There is no right to amend other than to conform with the proofs, which is not what's being attempted here. So the way I look at this is, and I'm not suggesting that the order that the orders come in the judge's order, I know that's the word order a lot there, but that's not dispositive. But if we look at it, we can tell what the judge's mindset is. He grants the motion to dismiss with prejudice. Then he denies the motion for leave. To me, that's very telling of exactly the way the process should have worked, that the motion to dismiss was properly before the court. It was heard. It was ruled upon. The court dismisses the case with prejudice. Now what do I do, trial court, with this motion for leave that has not even been noticed up yet? Well, I deny it because the opportunity for that to happen, the case law tells us it has to be proposed. And when I'm suggesting there's no, I could find no case that defines what the court's deemed to be proposed. But what I'm suggesting is that proposed means you have a filed motion with a notice of hearing. So it's before the court for consideration, consistent with the definition of proposed to set forth for acceptance or rejection. But let's go beyond that with the timing. The theme of my brief was, and Justice, you brought it up, we're talking about something that for 10 years, greater than 10 years, has been this lady going after my clients. And what I'll tell you is filing something at 4.32 p.m. the day before an oral argument is consistent with litigation for sport, which is what has been going on here. The very question you asked about why wouldn't you, you know, that seems like a pretty important factual allegation, why wouldn't you put that in the first pleading or the second pleading or the third pleading or sometimes because that's not what she wants to do. She wants to engage in litigation for sport. She files against my client in Cook County, gets kicked out of Cook County. She files against my client in federal court. She files against my client in Joe Davies County, gets kicked out of there. These are just all straight out of the record. And what it shows is, you know, this is someone who is engaging in litigation for sport, trying to, you know, I don't think the conversation occurred, but let's, you know, take the allegation at face value, hiding that until the fifth amended complaint, which is just another iteration of all the prior complaints minus some allegations. So we have some real issues before we can even get to Loyola. The other procedural issue we raise is what was not appealed here was the motion to dismiss ruling. And, and we know that wasn't appealed because it was consented to at the circuit court level. The, the, and we point out in our, our, our brief, the record where the judge says, you are not contesting the fifth, the motion to dismiss the fourth amendment complaint and counsel agrees with that. So now we come up on appeal, not before the appellate court, the motion to dismiss is not, is not appealed. And it can't be appealed because it was consented to below. You can't go on appeal and say, ah, I disagree with this now after I consented below that's that's forfeiture. So we have a motion to dismiss that was granted with prejudice. It's not on appeal and there is no way to turn that back. So that is the, you know, if it goes, if the case goes back, that's the law of the case. Can we amend in this manner after that final judgment? No, we can't. And counsel tacitly admits to this in his brief, when he talks about how the, uh, motion to dismiss, uh, I can get his exact words from page 11. Um, it was a, it was a step in the procedural progression leading to the denial of the motion to leave. He admits the motion to dismiss is granted before the motion for leave. That's, that's the ball game. He needed to appeal the motion to dismiss. Well, first of all, he needed to fight the motion to dismiss because he consents to a motion to dismiss with prejudice at the trial court level. He consents to it and, and then doesn't appeal it. So that's even before we even have to talk about Loyola factors at all. But let's talk about some Loyola factors. Let's talk about previous opportunities to amend. It is just absolute fiction to say there are no previous attempts. As I pointed out, I, I'm, the court has the record. The court can look back at the prior complaints and find out this is the exact same stuff as, as before. The only difference is now we're going to at the last minute, eight years, 10 years later, drop in this. Oh, by the way, we had a conversation. Second timeliness. I do not understand how someone can in good faith tell the court, well, because we're in the pleading stage, don't worry about all the court orders that we ignored that, that passed by. We were still timely. My definition of timely is doing something within the timeframe. The court orders me to do it. My definition of timely is not 4.32 PM the day before oral argument. Now, Loyola does not say that as long as we're in the pleading stage, it shall always be timely. It, it suggests that, you know, we shouldn't be doing this, you know, a day before trial. Instead, I guess we did it a day before hearing. I don't, I think that's a distinction without a difference. You can't, you can't do this at the last minute to avoid the consequence of not briefing the motion. Let's talk about, let's talk about whether it cures the defect. How can it cure the defect when the exact same allegations have been dismissed so many times before? The court in its discretion agree with the review standard. We're talking abuse of discretion here, which is very deferential to the trial court. The trial court has dismissed the same allegations five times previously. The wait time allegation is in the prior complaints. The, the, um, allegations that they had the customer information telling them allegedly that wait time was underpaid. They had that information. Mr. Uh, or counsel today tells you the conversation that's, that's the one new part in this, in this before that's not new information. So how does this cure the complaint? The court said it doesn't. The court was very clear about the fact that, that this proposed fifth amendment complaint is really just, you know, more of the decade that's been going on thus far. And then finally, with respect to prejudice, uh, the court finds prejudice. There's no credible argument that has been made as to why the court abused its discretion. And I can tell you, um, I'm the one who talks to my client. I can tell you there's great prejudice. They've been paying me on this case for a decade. And every time I get asked, why does the court let them have a second attempt? Why does the court let them have a third attempt? Why a fourth? Why a fifth? I get that question. And, and frankly, I mean, I, I think it's a very good question from a lay person and it goes directly to justice Mansell's question about how many times and, you know, the, how many times question, uh, is the prevalent underpinning of this appeal of, you know, when we don't have a new cause of action and we don't have new information, according to the allegations, you know, at least in the second minute plate, how many times to try and just really, you know, take the same allegations, mix them up in the, you know, in the bag of, of scrabble letters and put them down on a piece of paper. How many times does someone get the chance to do that? Uh, practicing in Cook County, I I've never seen six attempts, uh, in other counties. I've never seen six attempts. I don't have any idea how someone could say the circuit court in this case with as, with as generous as it was abused its discretion. And that's ultimately when we, when we get to, you know, counsel's correct. The statute where, where we all draw from is just and reasonable terms. That is not a one way street. That is not a, you know, let's be just and reasonable to plaintiff and, you know, to heck with defendant. That's, that's a two way street and no one will ever be able to tell me how a decade and five, six, you know, if this goes probably seven, eight, nine attempts later, how that's just unreasonable to defendant. When there is nothing that has changed from the very first dismissal to this dismissal, it's the same case. So, uh, with that, uh, I will, um, some time for justice's questions. Otherwise, uh, I'll, I'll stand on my brief. I see no questions. Thank you for your argument. Thank you counsel for the appellate. You may proceed. You're muted council. My apologies. A couple of quick points, your honor. Number one, it was raised by, uh, Mr. Jordan, whether the notice of appeal, uh, conferred jurisdiction onto this court. Uh, it did, um, the notice of appeal, uh, specifically at C767 identified the dates of the orders and the orders that were appealed from, uh, as well as, um, uh, provides that, um, it requests that this court, um, that, that, uh, that this court reverse the court's order, uh, the trial court's order, um, denying plaintiff's motion for leave and motion to vacate. Um, now notices of appeal are liberally construed. Um, and it's the notice of appeal. I, uh, identifies the exact same, um, the exact same order, um, that dismissed the fourth amended complaint with prejudice. Clearly, um, we, uh, if not explicitly, then certainly implicitly the notice of appeal is, is requesting this court, um, to reverse the trial court's dismissal with prejudice. Um, secondly, Your Honor, uh, Your Honors, as far as, as far as, uh, prejudice, which is the, the main factor, um, and, uh, courts have said, said the, the most important factor, um, you know, it's not a mere inconvenience. Uh, it's, the question isn't whether, uh, there's a mere inconvenience, uh, due to a delay. The court specifically on Loyola stated that, uh, it has to do with whether it impugns or, uh, implicates the defendant's, uh, ability to respond to the claims asserted in the, in the proposed pleading. Their defendants, defendants, uh, defenses remained intact. I'm sorry. Was there, did I interrupt Your Honor or no? Okay. Um, and unless, uh, and that's, that's all I wanted to say, Your Honor. Uh, were there any questions that I can answer or, um, if not, we'll stand on our brief. Thank you. I don't see any questions. We'll take this matter under advisement.